IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BARRY NAKELL,                                )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )            1:04CV00820
                                             )            1:04CV01079
LINER YANKELEVITZ                            )
SUNSHINE & REGENSTREIF, LLP,                 )
                                             )
                Defendant.                   )

## MEMORANDUM OPINION

BEATY, Chief Judge.

This matter is before the Court on cross-motions for summary judgment by Barry Nakell

("Nakell") [Document #41 in 1:04CV00820 and Document #30 in 1:04CV01079] and Liner

Yankelevitz Sunshine & Regenstreif ("Liner") [Document #42 in 1:04CV0820 and Document #51

in 1:04CV01079]. Nakell is a North Carolina attorney who was retained by Liner to act as local

counsel in a state class action in exchange for a percent of the attorney's fees recovered in the

state class action, and the parties now dispute whether Nakell is entitled to his fee. For the

reasons discussed below, Liner's Motions for Summary Judgment are DENIED and Nakell's

Motions for Summary Judgment are GRANTED.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On or about April 19, 2001, Nakell entered into a Retainer Agreement with Liner, a

California law firm, which initially provided that Liner would pay Nakell ten percent of any

attorney's fees obtained in the state class action to be filed in North Carolina in exchange for

Nakell's services as local counsel. The Retainer Agreement also provided that Nakell's fee was subject to re-negotiation in the event that Nakell's work in the case exceeded what the parties originally anticipated. Three years later, in the spring of 2004, the parties to the state class action reached a settlement in principle. In or about this time period, and while Liner and the state class action defendants were still in the process of negotiating a settlement, Nakell initiated a re-negotiation of his fee with the Liner firm. As a result, on May 3, 2004 Nakell and Liner entered into a written agreement in which Liner agreed to increase Nakell's fee to fifteen percent of Liner's attorney's fees in exchange for Nakell's agreement to release his right to sue for a higher fee (the "Modified Retainer Agreement").[1]

Almost immediately after signing the Modified Retainer Agreement, Liner learned for the first time that Nakell had a history of involvement in three separate shoplifting incidents, that Nakell previously had been disciplined by the North Carolina State Bar for those incidents, and that Nakell had been fired from his position as a professor at the University of North Carolina School of Law (collectively, "Nakell's history"). Liner had not asked Nakell about any of these facts prior to executing either of the Agreements, nor did Nakell ever voluntarily offer

---

[1] The Court notes that the parties have previously referred to the Modified Retainer Agreement as the "Settlement Agreement", as has the Court in its previous Memorandum Opinion dated October 7, 2005 [Document #21 in 1:04CV00820]. However, the Court will instead use the term "Modified Retainer Agreement" in this Memorandum Opinion for purposes of clarity.

In addition, when discussing the Retainer Agreement and the Modified Retainer Agreement together, the Court will refer to both contracts collectively as "the Agreements."

any of this information. However, despite its discovery of Nakell's history on or about May 3, 2004, Liner did not thereafter terminate its relationship with Nakell or inform Nakell that it had learned of his history. Rather, Liner permitted Nakell to continue to act as local counsel in the state class action for the next two months, and appeared with him at three separate state court proceedings for the purpose of obtaining approval of the state class action settlement.

As a result of these efforts, on July 7, 2004, Liner and Nakell obtained approval from the state court of the state class action settlement, which awarded a specified sum to the plaintiffs in that case. At Liner's suggestion and upon Nakell's approval, the agreement memorializing this settlement included a provision that the total amount of attorney's fees, including Nakell's fifteen percent share of them, would be paid solely to Liner and that Liner would thereafter transfer the fifteen percent share to Nakell ("the Fee Arrangement"). Liner subsequently received the total attorney's fees from the settlement, including the amount owed to Nakell under the terms of the Agreements, but has since not paid Nakell any of his share of the fees. As a result, Nakell filed a Complaint in North Carolina Superior Court on August 10, 2004 which was later removed to this Court. Nakell's Complaint, as amended, states the following claims: as to both of the Agreements, (1) breach of contract and (2) equitable claims for implied contract, unjust enrichment, or quantum meruit; and specifically with respect to the Fee Arrangement, Nakell also asserted additional claims of (3) fraud and (4) breach of fiduciary duty.

The same day that Nakell filed his lawsuit in North Carolina, Liner filed a lawsuit against Nakell in a state court in Los Angeles, California. This lawsuit was removed to federal court in

3

California, transferred to this Court, and consolidated with Nakell's lawsuit. Liner's claims in its California lawsuit, which are identical to the counterclaims it raises in Nakell's North Carolina lawsuit, are the following: as to both of the Agreements, (1) fraudulent concealment, (2) breach of fiduciary duty, and (3) constructive fraud, all based on Nakell's failure to disclose his history; as well as other claims for (4) breach of fiduciary duty and (5) constructive fraud, both of which are based on Nakell's attempt to seek a higher attorney's fee from Liner while Liner was engaged in settlement negotiations for the state class action. In addition, depending on which, if any, of these claims Liner is able to prevail on, Liner requests that the Court issue a declaratory judgment that either or both of the Agreements are unenforceable.

With respect to these claims, Nakell has now moved for summary judgment in his favor on his breach of contract claim [Document #41 in 1:04CV00820] and against Liner as to all of its claims in the California lawsuit [Document #30 in 1:04CV01079], which, as noted above, are the same as the counterclaims Liner stated against Nakell in his North Carolina lawsuit. Liner as well has moved for summary judgment in its favor on all of its counterclaims in the North Carolina lawsuit and against Nakell as to all of his claims in the North Carolina lawsuit [Document #42 in 1:04CV00820 and Document #51 in 1:04CV01079].

II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law."

4

_Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). There can be "no genuine issue as to any material fact" if the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case," since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson_, 477 U.S. at 248, 106 S. Ct. at 2510. As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [non-moving] party cannot prevail under any circumstances.' " _Campbell v. Hewitt, Coleman & Assocs._, 21 F.3d 52, 55 (4th Cir. 1994) (quoting _Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co._, 381 F.2d 245, 249 (4th Cir. 1967)).

When ruling on a summary judgment motion, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." _Bailey v. Blue Cross & Blue Shield_, 67 F.3d 53, 56 (4th Cir. 1995). The moving party bears the initial "burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." _Catawba Indian Tribe v. South Carolina_, 978 F.2d 1334, 1339 (4th Cir. 1992)(en banc). Once the moving party has met this burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. _Id._ In

5

so doing, the non-moving party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. Anderson, 477 U.S. at 248–49, 106 S. Ct. at 2510; Catawba Indian Tribe, 978 F.2d at 1339. In other words, the non-moving party must show "more than . . . some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of its position is insufficient to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); Catawba Indian Tribe, 978 F.2d at 1339.

III.    DISCUSSION

In analyzing the various motions for summary judgment, the Court will determine whether summary judgment for either party is appropriate as to any of the claims in the present case by (A) first discussing the parties' respective claims relating to the Agreements, and (B) then turning to Nakell's claims relating to the Fee Arrangement.

A.    CLAIMS RELATING TO THE AGREEMENTS

With regard to the Agreements, the Court notes first that the parties agree as to all of the material facts relating to the Agreements. In particular, Liner does not dispute that, under the Agreements' terms, Nakell is owed fifteen percent of the attorney's fees awarded in the state class action; nor does Liner dispute that it has failed to pay this fee to Nakell. Moreover, Nakell does not dispute that he failed to disclose his history both before and after negotiating the Agreements with Liner, and that he initiated a re-negotiation of the fee initially agreed upon in the Retainer

6

Agreement while Liner was engaged in settlement talks in the state class action. The Court

further notes that the Agreements' underlying contractual validity is undisputed.[2] Therefore,

the parties' only real disputes with respect to the Agreements are over the legal meaning of the

facts that gave rise to them.[3]

Liner argues that the Agreements should not be enforced because Nakell's failure to

disclose his history – both during pre-contract negotiations as well as after the Agreements were

entered into – constituted fraudulent concealment, breach of fiduciary duty, and constructive

fraud. Liner also contends that Nakell's attempt to seek a higher attorney's fee while Liner was

engaged in settlement negotiations for the state class action constitutes a breach of fiduciary duty

and constructive fraud. Finally, in the alternative to these affirmative claims, Liner argues that

summary judgment in favor of Nakell on his breach of contract claim and alternative quasi-

contract claims is inappropriate because Nakell breached the Agreements first by failing to

disclose his history and by rendering poor performance in the courtroom during the course of

---

[2] Indeed, the Court finds that the Retainer Agreement in this case is supported by consideration because Nakell rendered legal services to Liner in exchange for a promise of ten percent of attorney's fees at the conclusion of the class action litigation. See Carolina Helicopter Corp. v. Cutter Realty Co., 263 N.C. 139, 147, 139 S.E.2d 362, 368 (1964) (explaining that under North Carolina law "there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do." (internal quotations omitted)). Similarly, the Modified Retainer Agreement is supported by Nakell's agreement to release his right to sue for a higher fee.

[3] The Court notes that there is a factual dispute in this case over the quality and adequacy of Nakell's performance as local counsel in the state class action. However, the Court finds that this fact is not material because, as the Court will explain in the analysis to follow, it does not affect the Court's ultimate disposition of this case.

the state class action. The Court will now determine whether either party is entitled to judgment as a matter of law with respect to these claims.

### 1. MOTIONS FOR SUMMARY JUDGMENT WITH RESPECT TO LINER'S CLAIMS

The Court first turns to the question of whether either party is entitled to summary judgment on Liner's affirmative claims for fraudulent concealment, breach of fiduciary duty, and constructive fraud. Liner has moved for summary judgment seeking judgment in its favor as to these claims [Document #42 in 1:04CV0820 and Document #51 in 1:04CV01079] and Nakell has moved for summary judgment seeking dismissal of these claims as a matter of law [Document #30 in 1:04CV01079]. In analyzing Liner's claims, the Court will assume solely for purposes of this discussion that any of Nakell's alleged actions could be considered fraudulent conduct or in breach of any alleged duty; and thus the Court will focus its inquiry on Liner's conduct after it discovered what it believed was Nakell's unlawful conduct, that is, after Liner became aware of Nakell's history and alleged poor performance.

Under North Carolina law, "[f]raud does not render the contract void, but renders it only voidable at the option of the party defrauded. In other words, it is valid until rescinded. It is for the party defrauded to elect whether he will be bound." Van Gilder v. Bullen, 159 N.C. 291, 294, 74 S.E. 1059, 1060 (1912) (internal citation omitted) (cited approvingly for this proposition in Holt v. Holt, 232 N.C. 497, 501, 61 S.E.2d 448, 452 (1950)). Moreover, a breach of fiduciary duty also only renders a contract voidable. Restatement (Second) of Contracts § 173 (1981)

8

(explaining with respect to breach of fiduciary duty that "[i]f a fiduciary makes a contract with his beneficiary relating to matters within the scope of the fiduciary relation, the contract is *voidable* by the beneficiary [in the event of abuse of a fiduciary relation]." (emphasis added)). Furthermore, a party who discovers that a contract is voidable has two available remedies: it may choose to rescind the contract, recover back any money it paid under the contract, and sue for damages; or in the alternative, it may affirm the contract and bring an action to recover the damages it suffered as a result of the fraud. See Van Gilder, 159 N.C. at 295, 74 S.E. at 1060 (holding that defendant could sue for damages but not rescission because of two-year delay in bringing suit after discovery of fraud); Harroff v. Harroff, 100 N.C. App. 686, 687, 398 S.E.2d 340, 341 (1990) (recognizing rescission as a remedy for breach of fiduciary duty); see also Restatement (Second) of Contracts § 381 (1981) ("The power of a party to avoid a contract for . . . abuse of a fiduciary relation is lost if, after the circumstances that made it voidable have ceased to exist, he does not within a reasonable time manifest to the other party his intention to avoid it."); Bailey v. Vaughan, 178 W. Va. 371, 377, 359 S.E.2d 599, 650 (1987) (explaining that a director who commits a breach of fiduciary duty against shareholders is liable to the shareholders either to have the sale of stock rescinded or to respond in damages). However, "the right to rescind must be exercised promptly, and if there is unreasonable delay, the right is lost, and the defrauded party is generally relegated to his action for damages." Van Gilder, 159 N.C. at 295, 74 S.E. at 1060.

Applying this law to the present case, the Court notes that both of the bad acts Liner

9

asserts in support of its claims occurred on or about May 3, 2004. First, with respect to Nakell's history, Liner admits that it learned of that history almost immediately after signing the Modified Retainer Agreement on May 3, 2004. (Decl. of Steven A. Velkei, Document #35 in 1:04CV01079, p. 5.) Second, with respect to Nakell's alleged insistence on re-negotiating his fee while settlement talks in the state class action were ongoing, Liner admits that this also occurred just prior to May 3, 2004. However, the Court notes that Liner did not immediately terminate its relationship with Nakell as local counsel upon learning of these actions, nor did it treat the Agreements as if they were at an end. Rather, between May 3, 2004, when the Modified Retainer Agreement was executed, and July 7, 2004, when the state class action was finally resolved, Liner did not even mention the matter of the non-disclosure to Nakell, and more importantly, Liner also permitted Nakell to continue as local counsel in three separate court appearances in which Liner represented to the state court that it was fully satisfied with the attorney's fee award in the state class action. (Aff. of Barry Nakell, Document #30 in 1:04CV01079, Attach. #1, pp. 3, 5.) Therefore, even if any of the alleged conduct by Nakell could be considered fraudulent or in breach of any alleged duty, the Court finds that Liner did not promptly exercise its right to rescind the Agreements between the parties, but rather continued to accept the benefits of Nakell's services even after it was aware of the alleged unlawful conduct Liner now complains of.

In further support of this finding, the Court notes that over two months elapsed between the time Liner learned of Nakell's history and the time it attempted to avoid paying Nakell

10

under the Agreements, and Liner has not produced any evidence from which a reasonable jury could conclude that such a delay was reasonable. Not only did Liner wait over two months before raising its objections to Nakell or before attempting to rescind the Agreements, Liner also allowed Nakell to fully perform and waited to even mention the issue of rescission until after the state class action was completed and Nakell had rendered full performance of the Agreements. Under North Carolina law, Liner is not now permitted to rescind the Agreements due to the fact that it delayed in raising its right to rescind and continued to accept Nakell's services even after discovering its alleged right to rescind the Agreements. See Willis v. Willis, 203 N.C. 517, 522, 166 S.E. 398, 401 (1932) (" 'It is also a general principle that a person who knows that he is entitled to rescind a contract cannot wait until suit is brought for payment or other enforcement of the contract and then set up his grounds of rescission, or at least, such a course is regarded with great disfavor by the courts if there has been any considerable lapse of time since his discovery of the facts.' " (quoting Black on Rescission and Cancellation (2d Ed. 1929), part § 541, p. 1334) (cited with approval in Surratt v. Chas. E. Lambeth Ins. Agency, 244 N.C. 121, 131, 93 S.E.2d 72, 79 (1956))). Therefore, the Court finds that, due to Liner's delay and continued acceptance of Nakell's services without complaint, Liner has lost its right to rescind the Agreements and defeat Nakell's right to recover the full amounts Liner owes Nakell under the Agreements. Liner is thus left only with the option of seeking any damages it may have suffered as a result of Nakell's alleged fraudulent concealment, breach of fiduciary duty, and constructive fraud.

11

However, with respect to this option, it is well-settled that the party seeking damages bears the burden of showing "that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." Olivetti Corp. v. Ames Business Systems, Inc., 319 N.C. 534, 547-48, 356 S.E.2d 578, 586 (1987). Furthermore, the Court notes that damages are an essential element of each of Liner's claims for fraudulent concealment, breach of fiduciary duty, and constructive fraud. Rowan County Bd. of Educ. v. United States Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 659 (1992) (explaining that damage to the injured party is an essential element of fraud); Dove v. Harvey, 168 N.C. App. 687, 691-92, 608 S.E.2d 798, 801 (2005) (explaining that damages are an essential element of a breach of fiduciary duty claim); Strickland v. Lawrence, 627 S.E.2d 301, 306 (N.C. Ct. App. 2006) (explaining that a party must show that it was injured in order to survive a motion for summary judgment on a constructive fraud claim).

In this case, Liner first contends that it has sustained damage to its reputation through its public association with Nakell. However, the Court notes that Liner has not come forth with any evidence showing that it has lost a quantifiable amount of business due to its alleged loss of standing in the legal community, or any other evidence that might show how a fact-finder might determine the value of the harm to its reputation with reasonable certainty. To the contrary, Randall J. Sunshine, a partner in Liner, has admitted that "[b]eing publicly associated with Nakell is embarrassing to [Liner], and it is *impossible to quantify* the harm that such association has caused [Liner] and its members." (Decl. of Randall J. Sunshine, Document #34 in

12

1:04CV01079) (emphasis added). Therefore, the Court finds that Liner's allegations of harm to its reputation cannot be a basis for establishing the damages required for Liner's claims.[4]

Liner next contends that it was damaged by the cost of the increased number of hours it took to persuade the trial judge to approve the state class action settlement, and Liner further speculates that the trial judge required extra persuading because he knew of Nakell's history and was therefore skeptical of him. (Decl. of Steven A. Velkei, Document #35 in 1:04CV01079, p. 7 ("In retrospect, I believe that the attitude of . . . the presiding judge . . . may have been influenced by Nakell's criminal and ethical histories . . . . Indeed, in the hallway after the first hearing, Nakell told me that he did not think the judge wanted to award him any money.").) However, the Court finds that other than these bare suspicions, Liner has not presented any evidence from which a reasonable jury could conclude that the trial judge did actually know of Nakell's history, or, if the trial judge did know, that his disposition of the class action was influenced by that

---

[4] In Liner's response to the Motion for Summary Judgment Nakell filed in the California case originally brought by Liner, Liner does argue that summary judgment must be denied to Nakell on the issue of reputational damage because Liner has not yet had the opportunity to discover the information that is essential to its opposition. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Document #33 in 1:04CV01079, p. 5 ("[Liner] anticipates that evidence related to Nakell's reputation will reveal the detrimental impact of Nakell's professional standing on the proceedings and the harm caused to [Liner's] reputation.").) However, this brief was filed on December 5, 2005, prior to the May 1, 2006 close of discovery in this case; and since the close of discovery, Liner has submitted two other briefs – one on May 31, 2006 [Document #45 in 1:04CV00820 and Document #52 in 1:04CV01079] and another on July 3, 2006 [Document #52 in 1:04CV00820] – in which it had the opportunity to adduce evidence that its reputation was damaged in a way that can be quantified with reasonable certainty. However, Liner did not present any such evidence in either of these briefs. Therefore, the Court finds that Liner has had ample time and opportunity to discover and present evidence that the damage to its reputation can be quantified with reasonable certainty, and that it has failed to do so.

13

knowledge.

Finally, Liner attempts to establish damages by alleging that Nakell performed poorly in the courtroom, and that this poor performance imposed on Liner the increased cost of sending its attorneys to North Carolina to do work that could otherwise have been performed by a more competent local counsel. However, evidence of damages with respect to claims for fraud, breach of fiduciary duty, and constructive fraud is only sufficient if the damage alleged was *caused* by the activity complained of. See, e.g., United States Gypsum Co., 332 N.C. at 17, 418 S.E.2d at 658 (a claim of fraud requires a "false representation or concealment of a material fact . . . *resulting* in damage to the injured party." (emphasis added)). In the present case, the Court notes that the alleged fraud Liner complains of is Nakell's failure to disclose his disciplinary history and attempt to re-negotiate his fee, not the quality of Nakell's courtroom performance.[5] Thus, even assuming that Liner has come forward with sufficient evidence to prove that Nakell's performance was deficient, this fact is irrelevant to the question of damages in this case because Liner must prove that its damages were caused by the fraud complained of, not some other unconnected event.[6] For this reason and the reasons stated above, particularly in view of Liner's

---

[5] To the extent that Liner complains of Nakell's poor performance, that complaint is not an affirmative claim by Liner but rather a defense to Nakell's breach of contract claim. As such, the Court will discuss this issue below in its analysis of Nakell's claims.

[6] Moreover, to the extent that Liner may argue that Nakell's history affected his performance as local counsel negatively, the Court finds that there is no evidence in the record to support such an argument. In fact, the evidence presently before the Court indicates that Nakell's history did not significantly affect his ability to render quality legal services. Indeed, the North Carolina State Bar's Disciplinary Order makes clear that "Nakell's misconduct was

14

failure to forecast any damages it may have suffered because of Nakell's actions, the Court finds that summary judgment in Nakell's favor is appropriate as to these claims. In sum, the Court has concluded that Liner lost its right to rescind the Agreements by continuing to accept Nakell's services even after learning of the acts it complains of, and moreover, that Liner has not produced evidence of damages sufficient to send its claims to a jury. Therefore, Nakell's Motion for Summary Judgment as to Liner's claims for fraudulent concealment, breach of fiduciary duty, and constructive fraud will be granted and Liner's Cross-Motion for Summary Judgment seeking judgment in its favor on these claims will be denied.

## 2. MOTIONS FOR SUMMARY JUDGMENT WITH RESPECT TO NAKELL'S BREACH OF CONTRACT CLAIM

Nakell has moved for summary judgment in his favor with respect to his breach of contract claim [Document #41 in 1:04CV00820], and Liner has moved for summary judgment seeking dismissal of these claims [Document #42 in 1:04CV00820 and Document #51 in 1:04CV01079]. Liner contends that any breach of the Agreements by Liner in failing to pay Nakell is excused, and that Nakell is not entitled to summary judgment because Nakell breached the Agreements first by failing to disclose his history and by rendering poor courtroom

---

not related to his law practice," but rather was a direct result of a psychiatric disorder that led Nakell to commit petty thefts. (North Carolina State Bar Disciplinary Order, Document #33 in 1:04CV01079, Ex. B.) The State Bar also noted in its Disciplinary Order that "Nakell has assisted many clients unable to afford legal representation on a pro-bono basis in ways that have brought credit to the legal profession," and that his misconduct is mitigated by "good character and reputation, including support from the councilor and the Senior Resident Superior Court Judge from his district." Id.

15

performance.

However, the Court notes that even if Nakell breached the Agreements as Liner alleges, under North Carolina law, a party like Liner in this instance "may waive the breach of a contractual provision or condition without consideration or estoppel if (1) [t]he waiving party is the innocent, or nonbreaching party, and (2) [t]he breach does not involve total repudiation of the contract so that the nonbreaching party continues to receive some of the bargained-for consideration . . . (3) [t]he innocent party is aware of the breach, and (4) [t]he innocent party intentionally waives his right to excuse or repudiate his own performance by continuing to perform or accept[ing] the partial performance of the breaching party." Wheeler v. Wheeler, 299 N.C. 633, 639, 263 S.E.2d 763, 766-67 (1980); see also Restatement (Second) of Contracts § 246(1) (1981) ("an obligor's acceptance . . . of the obligee's performance, with knowledge of . . . the non-occurrence of a condition of the obligor's duty, operates as a promise to perform in spite of that non-occurrence.") In addition, "[i]t . . . make[s] little difference . . . whether the breach of the contract provision was allegedly material or not. The mere fact that the nonbreaching party elects to continue performance or accept performance is enough to trigger the waiver." Wheeler, 299 N.C. at 640, 263 S.E.2d at 767. Finally, "[w]aiver is a matter of law to be determined by the court where the facts are not disputed." Johnson v. Dunlap, 53 N.C. App. 312, 316, 280 S.E.2d 759, 762 (1981).

In considering the facts of the present case, the Court notes that Liner admits that it became aware of Nakell's alleged poor performance in the fall of 2003, and that it continued to

16

accept Nakell's services as local counsel until the case was finally settled in the spring of 2004. (Decl. of Steven A. Velkei, Document #35 in 1:04CV01079, pp. 1-2.) Therefore, it is evident that Liner continued to accept performance by Nakell and waived its right to assert Nakell's alleged poor performance as a defense of a prior breach of the Agreements by Nakell. Similarly, Liner admits that it learned of Nakell's history almost immediately after signing the Modified Retainer Agreement on May 3, 2004. (Decl. of Steven A. Velkei, Document #35 in 1:04CV01079, p. 5.) In addition, Liner does not deny that between May 3, 2004, when it discovered Nakell's history, and July 7, 2004, when the class action litigation was resolved, it did not mention the matter of non-disclosure to Nakell. In fact, Liner permitted Nakell to continue as local counsel in three separate court appearances in which Liner represented to the state court that it was fully satisfied with the attorney's fee award in the case. (Aff. of Barry Nakell, Document #30 in 1:04CV01079, Attach. #1, pp. 3, 5.) Liner thus accepted the benefits of Nakell's services even after learning of his history. Therefore, the Court finds that Liner waived its right to assert a breach of the Agreements by Nakell on this basis. Moreover, Liner has not raised any other valid defense or basis for failing to pay the fee owed to Nakell under the Agreements.[7] As such, the Court concludes that Nakell's Motion for Summary Judgment on his breach of contract claim will be granted and Liner's Motion for Summary Judgment seeking dismissal of the claims will be

---

[7] Liner does assert fraud as a defense to Nakell's breach of contract claim. However, North Carolina law requires a party asserting fraud as a defense to prove damages, and as explained above, Liner is unable to prove damages in this case. See Centura Bank v. Executive Leather, Inc., 132 N.C. App. 759, 762, 513 S.E.2d 804, 806 (1999) (explaining that one of the elements of the defense of fraud is damage to the injured party).

17

denied.[8]

## B. LINER'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO NAKELL'S CLAIMS RELATING TO THE FEE ARRANGEMENT

Finally, Liner has moved for summary judgment seeking dismissal of Nakell's claims for fraud and breach of fiduciary duty relating to the Fee Arrangement [Document #42 in 1:04CV00820 and Document #51 in 1:04CV01079]. Under the terms of the Fee Arrangement, which are contained in the state class action settlement, Liner and Nakell agreed that Liner would receive Nakell's attorney's fee from the state class action defendant and would then pay that portion to Nakell. Liner has since refused to pay Nakell his fee as provided for in this Fee Arrangement.

As a result, Nakell now asserts a claim for breach of fiduciary duty in which he contends that the Fee Arrangement created a fiduciary duty on the part of Liner which Liner has since

_____

[8] The Court notes that Liner's claim for a declaratory judgment that the Agreements are invalid is moot in light of the Court's decision to grant Nakell's Motion for Summary Judgment on his breach of contract claim. Moreover, this conclusion also moots Nakell's equitable quasi-contract claims because the enforceable Agreements provide Nakell with an adequate remedy at law. See Elec-trol, Inc. v. C. J. Kern Contractors, Inc., 54 N.C. App. 626, 630, 284 S.E.2d 119, 121 (1981) (explaining that "[a]n express contract precludes an implied contract with reference to the same subject matter"). Accordingly, Liner's equitable defense of unclean hands is inapplicable because Nakell no longer has any valid equitable claims. See Creekside Apartments v. Poteat, 116 N.C. App. 26, 39, 446 S.E.2d 826, 835 (1994) (holding that, since trial court did not grant equitable relief, doctrine of unclean hands was inapplicable). Similarly, Liner's alternative equitable defense of *in pari delicto* is inapplicable because Liner was not a part of any of the alleged fraud or other illegal acts alleged against Nakell. See Cauble v. Trexler, 227 N.C. 307, 313, 42 S.E.2d 77, 81 (1947) (explaining that doctrine of *in pari delicto* applies in situations where both parties are involved in a contractual illegality; and in such situations, a court of equity may find in favor of the comparatively innocent party).

18

breached by refusing to pay Nakell his fee. Under North Carolina law, to "state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary failed to act in good faith and with due regard to [plaintiff's] interests." Toomer v. Branch Banking & Trust Co., 171 N.C. App. 58, 70, 614 S.E.2d 328, 337 (2005) (internal quotations omitted). This fiduciary relationship exists "in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Stamm v. Salomon, 144 N.C. App. 672, 680, 551 S.E.2d 152, 158 (2001) (quoting Hajmm Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991). The existence of a fiduciary relationship is generally a question of facts and circumstances. Id.

In the present case, Liner contends that Nakell's claim fails as a matter of law because Nakell cannot claim the existence of a fiduciary relationship in the context of Liner's duty to pay Nakell under the Fee Arrangement.[9] However, Liner does not present any evidence or basis in support of this contention. Having reviewed the evidence presented, the Court finds that there is a genuine issue of material fact in this case as to whether Liner did owe Nakell a fiduciary duty that arose as a part of the Fee Arrangement.[10] Therefore, Liner's motion for summary judgment

---

[9] Specifically, Liner contends that Nakell's claims are inconsistent with other positions taken by Nakell, but Liner has not established that Nakell's positions are in fact inconsistent, nor has Liner presented any authority precluding Nakell from taking alternative legal positions.

[10] The Court concluded in the previous section that Liner's claims would not survive summary judgment because of Liner's failure to promptly rescind and failure to produce evidence of damages. Given this conclusion, the Court notes that it need not determine whether

19

seeking to dismiss that claim as a matter of law will be denied.

In addition to this breach of fiduciary duty claim, Nakell has also asserted a claim of fraud relating to the Fee Arrangement. As the basis for this fraud claim, Nakell asserts that upon Liner learning of his history, Liner decided that it would not honor the Agreements, but Liner nevertheless proposed the Fee Arrangement to him without mentioning its alleged decision to not pay him his fee. Nakell asserts that he agreed to the Fee Arrangement in reliance on his mistaken belief that Liner intended to pay him his fee. Based on these assertions, Nakell contends that Liner committed fraud by failing to inform him, prior to his entering the Fee Arrangement, of its decision that it would ultimately refuse to pay Nakell his fee.

With respect to a claim of fraud, the essential elements that must be proven are "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." United States Gypsum Co., 332 N.C. at 17, 418 S.E.2d at 659. In addition, where, as here, the alleged fraud is by concealment or nondisclosure, the plaintiff must also establish that the defendants had a duty to disclose. See Kron Medical Corp. v. Collier Cobb & Assoc., Inc., 107 N.C. App. 331, 340, 420 S.E.2d 192, 197 (1992) (explaining that silence may constitute actionable fraud if it relates to "a material matter known to the party and which it is his legal

a fiduciary relationship may have existed between the parties under the Agreements (prior to the execution of the Fee Arrangement). However, as to the separate question of Nakell's claims related solely to the Fee Arrangement, those claims with respect to the existence of a fiduciary duty owed by Liner to Nakell raise questions for the jury as noted above.

20

duty to communicate to the other contracting party"); see also Harton v. Harton, 81 N.C. App. 295, 298, 344 S.E.2d 117, 119 (1986) (explaining that, in the context of a claim of fraud by silence, a duty to disclose arises where the parties to the transaction are in a fiduciary relationship, or are negotiating at arm's length and one of them takes affirmative steps to conceal material facts from the other, or "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence.")

In the present case, Liner contends that Nakell's fraud claim fails as a matter of law because Nakell cannot claim the existence of a duty to disclose in the context of the Fee Arrangement. However, Liner again offers no evidence or basis to support its contention. Having reviewed the evidence presented, the Court finds that there are genuine issues in this case as to whether Liner did owe Nakell a duty to disclose after deciding that it would not pay him his fee and then nevertheless entering into the Fee Arrangement with him. Accordingly, the Court concludes that Liner has not shown that it is entitled to judgment as a matter of law on Nakell's claim for fraud.

Therefore, Liner's Motion for Summary Judgment seeking dismissal of Nakell's claims for fraud and breach of fiduciary duty relating to the Fee Arrangement will be denied.

IV.    CONCLUSION

For the reasons discussed above, Liner's Motions for Summary Judgment [Document #42 in 1:04CV00820 and Document #51 in 1:04CV01079] will be DENIED, and Nakell's Motions

for Summary Judgment [Document #41 in 1:04CV00820 and Document #30 in 1:04CV01079] will be GRANTED. Specifically, the Court will GRANT Nakell's Motion for Summary Judgment on his claim for breach of contract with respect to both the Retainer Agreement and the Modified Retainer Agreement, and will enter judgment in Nakell's favor for the amount due to him under the Agreements. The Court will also GRANT Nakell's Motion for Summary Judgment with respect to Liner's claims for fraudulent concealment, breach of fiduciary duty, and constructive fraud, and these three claims by Liner will be dismissed with prejudice.

Accordingly, given these determinations and the parties' prior filing of trial briefs and jury instructions for trial during the January 2007 session of Court, the Court ORDERS that the parties shall file supplemental proposed jury instructions by January 4, 2007 limited to the claims remaining as a result of this ruling. In addition, the Court FURTHER ORDERS the parties to submit briefs by January 4, 2007 calculating the amount Nakell is owed under the Agreements as a result of this ruling. The Court will not enter final judgment in this case until after it has reviewed these briefs and concluded the trial on the remaining claims, that is, Nakell's claims for fraudulent concealment and breach of fiduciary duty with respect to the Fee Arrangement.

An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 29th day of December, 2006.

United States District Judge